## TALBOT *v.* TALBOT.

[No. 13,206.   Filed July 31, 1929.   Rehearing denied October 8, 1929. Transfer denied April 30, 1930.]

*Eli F. Seebirt, Lenn J. Oare* and *George W. Omacht,* for appellant.

*James L. Harman* and *Otis S. Romine,* for appellee.

McMAHAN, C. J.—This is an action by John W. Talbot, appellee herein, against his son, John Harold Talbot, to have the latter declared a trustee of certain property, and for an accounting. The facts were found specially, with conclusions of law in favor of appellee, and resulted in a decree requiring appellant to account to appellee for $6,880.11, and that appellant held as trustee for appellee 50 and one-half shares of the capital stock of the Mishawaka Realty Company and 24 shares of the capital stock of the Co-Operative Investment Company, and ordering that appellant return all of such stock to appellee.

The errors assigned relate to the overruling of appellant's motion for a new trial, the correctness of each conclusion of law, and the overruling of his application to withdraw the submission from the regular judge. The trial of this cause was commenced May 16, 1927. The introduction of the evidence was concluded May 19, and the cause taken under advisement. On August 26, appellant filed with the clerk his written application to withdraw the submission from the judge, stating therein that the court had held the matter under advisement for more than 90 days without a decision upon the issues theretofore submitted. The regular judge being absent, the filing of this application was called to the attention of the judge *pro tempore,*

but no action was taken until September 12, when the attention of the regular judge was called to the filing of such application.   Affidavits in support of and in opposition to such application were filed.   The regular judge refused to set aside the submission, and, in so doing, stated and set out in the record his reasons for such refusal.   The statement of the court so entered in the order-book is, in substance, as follows:   At the conclusion of the evidence, the court requested counsel for each party to present their suggested finding of facts and conclusions of law; that appellant and his attorneys at that time requested that the court indicate its finding of facts and conclusions of law before counsel prepare their suggested findings so that their work might be simplified; that, in keeping with that request, the court indicated and announced to the parties and attorneys its finding of facts and conclusions of law; that the court at that time requested each party to submit such special findings and conclusions as he believed proper; that the court indicated that argument would be heard in such findings on June 25; that, on June 25, all the parties appeared before the court, at which time the attorneys for appellee submitted in writing special findings and conclusions of law in keeping with those theretofore announced by the court; that the findings so submitted were examined by the court and the parties, and the court indicated its determination to adopt and file such findings and conclusions as of that date; that appellant and his attorneys objected to having the entry made at that time, saying they wanted to prepare and file a motion for a new trial and prepare the necessary steps for taking an appeal; that the court at that time called the attention of appellant and his attorneys to the statute governing the procedure and indicated that more than 90 days might elapse before it would be possible for the court to make the entry; that appellant and his attorneys then re-

quested the court to continue the cause under advisement until the first day of the September term of court, and that it was then agreed that the court should hold the cause under advisement, and that, in the meantime, appellant would prepare his motion for a new trial so that the record might be finally completed and his contemplated appeal perfected on the first day of the September term of court.

Assuming, as this court must, that the statute, §603 Burns 1926, Acts 1923 p. 254, forbidding a trial court to hold matters under advisement more than 60 days, is valid, we hold, under the facts, that the court did not err in refusing to set aside the submission and to appoint a special judge to take jurisdiction of the cause.

The salient facts as found by the court are as follows: Appellant is a son and only child of appellee; appellee, his wife, Minnie E., and appellant, who is unmarried, live in the same house in South Bend; on September 23, 1919, appellee purchased a farm for which he paid the whole of the purchase price and had the title thereto conveyed to appellant. In 1922, appellee employed a real estate agent to sell such farm, and, through such agent, the farm was sold for $4,756, $1,200 of which was paid to appellee in cash, the purchaser giving his notes payable to appellant for the balance; one of these notes, amounting to $350, was paid to appellee; the balance due on the other three notes, less a discount, was paid to appellant, the amount so paid to appellant being $3,431.20, which he still retains. Prior to the purchase of this farm, appellee told appellant he intended to purchase the same, and that he should place the title thereto in appellant's name, to be held by appellant for appellee, to be reconveyed to him or dealt with as he directed, and, when the farm was sold and the notes and mortgage made

payable to appellant, it was agreed that appellant should hold the same in trust for appellee.

On March 1, 1923, appellee and his wife were the owners, as tenants in common, of an undivided one-half interest in a certain land contract, by which the Colpaert Realty Corporation and another agreed to purchase such real estate from appellee and his wife and the other one-half from the other owner; appellee told appellant he was intending to convey his interest in said contract to appellant to be held by him in trust for appellee, appellant to collect the payments on the contract and account to appellee therefor, to which appellant agreed; such conveyance and assignment were made, and appellant has collected thereon $5,354.89, which he retains.

On September 1, 1922, appellant and appellee entered into an oral agreement wherein it was agreed that appellee would, from time to time, place in the name of appellant personal property in the nature of stocks, bonds, notes, etc., to be held by appellant in trust for appellee, pursuant to which agreement, appellee assigned and turned over to appellant an undivided one-half interest in five shares of the capital stock of the Indiana Trust Company of South Bend and 50 and one-half shares of the capital stock of the Mishawaka Realty Company.

Appellee furnished appellant $2,000 to purchase two shares of stock in the Co-Operative Investment Company such stock to be held in trust for appellee; appellant took such $2,000 and purchased the stock, and, without the knowledge or consent of appellee, had the stock assigned to E. N. Kaiser, who still holds said shares of stock in his name; since that time, said company has issued stock dividends thereon amounting to 22 shares; appellant owns in his own right 72 shares of the stock of said company; appellant, a few months after receiving such stock, sold the undivided one-half of the five shares of

stock of the Indiana Trust Company for $318.75, which amount appellant kept. Appellant kept and still has the 50 and one-half shares of the capital stock of the Mishawaka Realty Company. At the time of the several transfers and assignments and deeds from appellee to appellant and at the time of making said agreements that appellant should hold said property in trust, appellee had trust and confidence in his son, such trust and confidence being the consideration for the making of such transfers and assignments, all of which were made pursuant to said trust agreements, in good faith, and without any fraudulent intent. After said transfers and assignments to appellant, appellee had no property left, except about $50 in cash, a few personal effects, and a parcel of real estate in South Bend, which was owned by appellee and his wife as tenants by the entireties, and which was used by the parties, including appellant, as a home. Appellee's demand for a return of the property and for an accounting by appellant was refused.

Upon these facts, the court concluded: (1) That the law was with appellee; (2) that he was the owner of the $3,431.26 received by appellant on account of the sale of the farm, with interest from September 1, 1924; (3) that he was the owner of one-half of the money collected by appellant on the Colpaert land contract amounting to $5,354.89, with interest from September 1, 1924, on one-half the amount collected up to September 1, 1924, which is $646.63, and on sums thereafter collected up to May 15, 1925, which is $1,902.11, and one-half of the amount thereafter collected without interest, and that appellant should reconvey to appellee certain of the lots mentioned in the Colpaert contract; (4) that appellee was the owner of one-half of the money received by appellant upon the sale of the Indiana Trust Company stock, amounting to $318.75, with interest from September 1, 1924; (5) that he is the owner of 50 and

one-half shares of the stock of the Mishawaka Realty Company; (6) that he is the owner of 24 shares of the stock of the Co-Operative Investment Company; (7) that appellant held all of the above-mentioned property, stocks and money as trustee for appellee; (8) that appellant should pay to the clerk for the use of appellee the money and interest mentioned in conclusions 2, 3 and 4, and assign to appellee a one-fourth interest in the Colpaert land contract and by deed convey a one-fourth interest in the lots mentioned in the third conclusion; (9) that appellant should transfer and assign to appellee 50 and one-half shares of stock of the Mishawaka Realty Company and 24 shares of the Co-Operative Investment Company. Nos. 10 and 11 relate to the appointment of a commissioner to make transfers and to the payment of the costs.

Appellant contends that the decision of the court is: (a) Not sustained by sufficient evidence, and (b) that it is contrary to law. In considering these contentions, it must be kept in mind that they relate to and challenge the special finding of facts and not the conclusions of law. In our discussion of the action of the court in overruling the motion for a new trial, we must and will ignore the conclusions of law and the judgment based thereon. Appellant asserts that, in order to establish a trust, it was necessary for appellee to allege and prove that the property was placed in appellant's name without any fraudulent intent, and that such fact was neither alleged nor proved.

In 1921, appellee was indicted, and later tried and convicted in the federal court and sentenced to imprisonment in the federal prison at Leavenworth, Kansas. He left South Bend for prison March 1, 1923. Pending this criminal action and just before leaving for Leavenworth, he transferred the property in question to appellant, his only child, aged about 25 years, and who was

then occupying an office with appellee, both parties being lawyers. The farm mentioned in the finding was purchased by appellee in 1919, the purchase price paid by him; and the title taken in the name of appellant. Appellee sold this farm in August, 1922, $1,200 of the money being paid by the purchaser to appellee, the balance being evidenced by notes payable to appellant and secured by a mortgage. The inference to be drawn from appellee's testimony is that these notes were delivered to him, that he put them away in his office, telling appellant the transaction had been completed, and also telling him where the notes were, and that, if the purchaser came in during the absence of appellee, that appellant should take the money, turn the notes over to the purchaser, and release the mortgage. On the other hand, it might be inferred from the testimony of appellant that the notes were delivered to him at the time of the sale. He testified that one of the notes was paid to him and that he gave the money to his father before the latter went to Leavenworth.

Appellant denied there was any agreement that he was to accept and hold any of the property in trust for his father. His claim was, and is, that his father had turned all the property over to him as a gift. Appellee testified that all of the property was turned over to appellant pursuant to an agreement whereby appellant was to take and hold the same in trust for appellee. Two disinterested witnesses testified that appellant had told each of them that he held all the property in trust for appellee. The Colpaert land contract was dated February 14, 1923, and, by its terms, appellee and his wife, being the owners of a one-half interest in the land therein described, agreed to convey their interest to the Colpaert Realty Company. By a deed dated February 27, 1923, appellee and his wife conveyed the lots therein described to appellant, and,

on March 1, 1923, just before appellee started to prison, this deed and an assignment of the Colpaert contract were delivered to appellant. On the trial, it was stipulated that the Colpaert Company had paid to appellant on this contract $4,840.94, $320 of which was paid in September, 1923, three payments in 1924, aggregating $2,275.23, four in 1926, amounting to $918.59, and two in 1927, amounting to $563.95—one-half of the money so received by appellant, and which the court found was held by him in trust for appellee, being $2,420.47. Some of the other property in question was turned over to appellant in the latter part of 1922, while the greater part of it was turned over to him March 1, 1923, and an inference might be properly drawn that the property was turned over to appellant in anticipation of the pending imprisonment of appellee. On and prior to March 1, 1923, appellant and appellee appear to have been on friendly terms, each having full and implicit confidence in the other. Without a further review of the evidence, we hold it amply sufficient to sustain the finding that the transfer of the property in question was made to appellant without any fraudulent intent, and it is sufficient to sustain the finding that all of the property was transferred and delivered to appellant by appellee pursuant to and in accordance with an agreement that appellant should hold the same in trust for appellee.

Referring to the assignment of the capital stock of the Indiana Trust Company, appellant says the agreement whereby the five shares were transferred to him and his mother was in writing and definitely stated the terms of the transfer of such stock and that oral evidence could not be received to displace or alter the legal effect of the express terms thereof. The so-called agreement referred to by appellant is the written assignment of the stock certificate stating that appellee had sold, assigned and transferred to appellant and his mother the five shares

as joint tenants, and authorizing appellant to transfer the stock on the books of the company. This assignment does not purport to state the agreement under which the stock was transferred. The undisputed evidence is that the agreement, by virtue of which the assignment was made, was oral, and, as heretofore stated, the evidence is sufficient to sustain a finding that all of the property in question was transferred and assigned to appellant to be held by him in trust.

Appellant specially insists that the finding that he had collected $5,354.89 on the Colpaert contract is not sustained by sufficient evidence. There is merit in this contention. It was stipulated on the trial that $4,840.94 had been paid to appellant on this contract. Appellee, however, insists no question as to the amount of the recovery is presented, for the reason that appellant did not, in his motion for a new trial, challenge the amount of the recovery by a specification that there was error in the amount of the recovery. This contention cannot prevail. If there had been a general finding, there would be merit in this contention. Where there is a special finding, the amount of the recovery is based upon and must follow the conclusions of law. If the conclusions of law relating to the amount of the recovery are not correct, the error must be challenged by exceptions to the conclusions of law. If the facts are not correctly found, the error therein must be raised by motion for a new trial, challenging the sufficiency of the evidence to sustain the finding.

In the instant case, the court found that appellant had collected $5,354.89 on the Colpaert contract, when the evidence, without conflict, is that he collected but $4,840.94. It follows that this finding is not sustained by the evidence, and is properly presented by the specification in the motion for a new trial that the finding of the court is not sustained by sufficient evidence.

A general finding covers both facts and law. A special finding should be limited to facts. If conclusions of law are set out in the special finding of facts, they will be ignored. While the finding in question is not sustained by the evidence, it does not necessarily follow, as will be hereafter shown, that the cause must be reversed. It is a well-settled rule that, where the record shows there has been a fair trial upon the merits and a correct result reached, a judgment will not be reversed because of intervening errors.

Appellant next attacks the finding in so far as it relates to the conveyance to him of the real estate owned by appellee and his wife and which they had contracted and agreed to convey to the Colpaert Company, on the ground that the same is not sustained by sufficient evidence, and is contrary to law. In this connection, it is to be observed that appellant makes no claim that any fact bearing upon this question is not fully sustained by the evidence or that the court failed to find all the facts on which there was any evidence. Nor is there any claim that this or any other finding is contrary to law, unless it be the finding that the deed conveying the lots to appellant was made in trust to be managed and controlled for the benefit of appellee. This question is so closely connected with the contention that the court erred in its conclusions of law that we will dispose of it when we come to a consideration of the alleged errors in the conclusions of law.

What has been said in relation to the finding concerning the stock of the Indiana Trust Company applies with equal force to the contention that the finding relating to the stock of the Mishawaka Realty Company, and for like reasons, we hold that the finding that the stock of the latter company was assigned to appellant in trust is also sustained by the evidence. As a matter of fact, appellant has not challenged the correctness of the facts

as actually found by the court. His main contention is that neither the evidence nor the finding of facts justifies a conclusion, either as a fact or as a matter of law, that appellant holds any property in question as a trustee. The undisputed evidence shows that, on the day appellant left South Bend to enter the prison at Leavenworth, he transferred to appellant property, real and personal, worth many thousands of dollars, and that, after such transfers were made, he was practically penniless. He was entering upon a long term of imprisonment, and it was only natural that he should want some one, in whom he had confidence, to look after and care for his financial affairs during that time. He had implicit confidence in appellant and transferred all his property to appellant as he testified, and as the court found without any fraudulent intent and under an agreement that appellant was to hold all of such property in trust for appellee.

The only objection made to the second conclusion of law is that it is "contrary to the weight of the evidence." This objection is not tenable. The correctness of a conclusion of law is determined by the special finding of facts and not by the evidence.

The court found as a fact that appellant had collected $5,354.89, on the Colpaert contract. The third conclusion of law is to the effect that appellee is the owner of one-half of the money so collected "with interest thereon from September 1, 1924, on one-half the amount collected up to September 1, 1924, which is $646.63, and on the sums thereafter collected up to May 15, 1925, which is $1,902.11, and one-half the amount thereafter collected without interest." As suggested by appellant, there is nothing in the finding indicating the amount of any single payment or the date when the same was made to him on the Colpaert contract, from which the amount of interest can be calculated. The facts found specially must be such as will warrant

the conclusions of law based thereon, otherwise such conclusions will be erroneous. It follows that this conclusion of law, in so far as it relates to the right to recover interest from the dates and on the several amounts therein mentioned, is erroneous.

We are unable to reconcile this conclusion of law with the finding of facts or with the judgment. Under the second conclusion, appellee was entitled to recover $4,055.76, and, under the fourth conclusion, he was entitled to recover $376.75, a total of $4,432.51. If that part of the third conclusion relating to interest be ignored, appellee would be entitled to recover one-half of $5,354.89, or $2,677.44. This added to $4,432.51, amounts to $7,109.95, while the judgment actually rendered is for $6,980.11. But, as heretofore indicated, the finding that appellant collected $5,354.89 on the Colpaert contract is not sustained by the evidence. Instead of having collected that sum, he collected only $4,840.94. Ordinarily, when the amount of the recovery is in excess of the amount justified by the conclusions of law, the error may be remedied without granting a new trial, by a reversal with directions to restate the conclusions of law, or the judgment may be affirmed, conditioned on a remittitur of the proper amount. In the instant case, the court erred both in the finding of facts and in stating the third conclusion of law as to the amount of the recovery on the facts found. The evidence as to the amount paid to appellant on the Colpaert contract is undisputed and conclusively shows that the amount paid to appellant on that contract was $4,840.94, of which $2,369.31 was paid before the commencement of this action, and $2,471.63 was paid later. This action was commenced July 31, 1925. The special finding of facts was entered of record September 12, 1927. Under the uncontradicted evidence, appellee was entitled to recover one-half of the money paid to appellant on the

Colpaert contract before suit, with six per cent interest, from commencement of suit, which amounts to $1,334.69. He was also entitled to recover one-half of the money paid after suit, with interest from date of each payment to date of the finding. Appellee was entitled to recover under the facts and under the second and fourth conclusions of law $4,432.51, and, under the undisputed evidence, he was also entitled to recover the further sum of $2,660.85, on account of the money paid to appellant on the Colpaert contract, making a grand total of $7,063.36, for which appellee was entitled to a judgment. This being true, the error in the finding as to the amount paid to appellant on the Colpaert contract and the error in the third conclusion of law were not harmful to appellant. The errors resulted in a judgment in favor of appellee in a less sum than he was entitled to recover under the undisputed evidence.

The other conclusions of law are clearly correct. Both the evidence and the facts as found by the court establishes a trust under the third provision of §13449 Burns 1926, and §2976 R. S. 1881.

A correct result having been reached, the judgment is affirmed, notwithstanding the intervening errors.