## NEWELL, ADMINISTRATOR v. NEWELL

[No. 26,977. Filed January 25, 1938.]

*Ray Deahl,* and *Seebirt, Oare, Deahl & Omacht,* for appellant.

*Mehl & Mehl,* for appellee.

ROLL, J.—Appellee filed a claim against the estate of Joseph Elmore Newell, the substance of which is as follows:

"Estate of Joseph Elmore Newell, Deceased
  To Charles R. Newell, Dr.
  Sale of one-half (½) of stock in Newell Bro.'s Store.

| | | |
|---|---|---|
| March 3, 1924 | $40,000.00 | |
| By Cash March 3, 1924 | | $20,000.00 |
| By Cash March 2, 1925 | | 2,500.00 |
| By Cash about March 4, 1928 | | 2,500.00 |
| By Cash about May 1, 1930 | | 5,000.00 |
| | $30,000.00 | $30,000.00 |

| | |
|---|---|
| Balance due Principal | $10,000.00 |
| Interest at 6% per annum has been paid to May 1, 1932. Ininterest due to Sept. 15, 1934 | 1,227.18 |
| Total amount due | $11,227.18" |

The claim was disallowed by the administrator, and said claim was transferred to the trial docket of the circuit court, where a trial was had before a jury and a verdict returned for appellee in the sum of $10,000.00.

Appellant's motion for a new trial was overruled and this is the only error assigned on appeal.

The evidence material to the questions here presented are practically undisputed and are in substance as follows: Charles R. Newell and Joseph Elmore Newell were brothers and for some years prior to March 3, 1924, were partners, engaged in the retail dry goods business in the city of Goshen, Indiana. Some time in the latter half of the year 1923, the subject of a purchase or sale of their interest in the store was discussed by the partners. This subject was discussed frequently until March 3, 1924, when an agreement was reached, by the terms thereof Charles R. Newell, appellee agreed to and did sell and transfer his one-half interest in the stock of said store to his brother Joseph Elmore Newell, for the agreed price of forty thousand ($40,000.00) dollars. Joseph Elmore Newell paid Charles R. Newell twenty thousand ($20,000.00) dollars cash, and gave eight promissory notes, of the principle sum of two thousand five hundred ($2,500.00) dollars each for the balance of twenty-thousand ($20,000.00) dollars. That said notes were accepted and held by appellee. That Joseph Elmore Newell paid one of said notes on or about March 2, 1925, and another on or about March 4, 1928. That some time in 1928 or 1929, the remaining six notes held by Charles R. Newell were for some reason surrendered to Joseph Elmore Newell (appellee claiming they were surrendered at the request of Joseph Elmore Newell, and appellant contending they were surrendered at the request of appellee), the reason why they were surrendered is immaterial here, and thereafter the indebtedness was carried as an open account. To secure this open account, certificates of preferred stock in the Newell Brothers Co. (Joseph Elmore Newell, and his two sons, Robert and Ned, having incorporated the business) were assigned to appellee as col-

lateral security. The stock was not transferred to him on the books of the company but marked on the stub, "transferred to C. R. Newell." Sometime afterwards, at the request of appellee, the stock held by him as collateral was surrendered and new certificates were issued to Fannie Newell, wife of Charles R. Newell. The evidence shows that appellee requested Joseph Elmore Newell to issue the stock in the name of his wife because he (Charles R. Newell) did not think his wife was sufficiently protected in case of his death, and asked Joseph Elmore Newell, that in case of his death to pay what was due him to his wife. Joseph Elmore Newell said he would do that, and that it was understood at the time appellee surrendered the certificates and new certificates were issued in the name of Fannie Newell, that she was merely holding said stock as collateral security for the open account, in trust for Charles R. Newell. That the open account was never sold or transferred to Fannie, but remained in appellee and was so treated thereafter by both parties. That about May 1, 1930, Joseph Elmore Newell paid to Charles R. Newell five thousand ($5,000.00) dollars on said account, and two certificates of preferred stock held by Fannie Newell were surrendered by Charles R. Newell to the said Joseph Elmore Newell. All conversations and business with reference to payment on account and the interest thereon was had with appellee. At no time was Fannie Newell consulted and no one regarded her as the owner of the account or the preferred stock. Appellant does not contend that the full purchase price of the stock of goods has been paid, but concedes that there remains unpaid ten thousand ($10,000.00) dollars of said purchase price.

It is first contended by appellant that the fact that the stock was issued and held by Fannie Newell constituted

her the owner of the open account and appellant cites 41 C. J. p. 676, §690, which reads as follows:

"A mortgage lien cannot be transferred apart from the debt it secures, and an attempt to do so is nugatory. Hence in the absence of countervailing facts the intention to transfer for the debt will be presumed from the assignment of the mortgage, and this is true, although the note or bond evidencing the debt was not transferred, or although no mention of them was made in the instrument of assignment."

This section deals with the presumption in the absence of countervailing facts. But in the case at bar the evidence is uncontradicted, and positive that no transfer of the open account to Fannie Newell was ever made, and the jury by its verdict so found. The judgment will not be disturbed upon this ground.

Appellant next contends that it is a condition precedent to plaintiff's right to have his claim allowed against the estate that he bring before the court and subject to its orders, the property which he has received as collateral security to secure the payment of his debt, and cites as authority for this proposition §6-1016 Burns Ind. St. 1933, §3134 Baldwin's 1934. We find no such provision in this statute.

Appellant's point six is based upon the assumption that the transfer of the stock to Fannie Newell, wife of appellee, was wrongful, and therefore it will be considered that he has elected to accept the stock in payment of the debt, but appellant has not pointed out wherein it was a wrong to transfer the stock to Fannie Newell or in what manner he was injured thereby, and we are unable to discover any wrongful act as disclosed by the facts in this case.

Appellant complains of instruction No. 1, given at the request of appellee, and says that it places a burden of

proof upon the estate where in law the burden was upon the claimant. This instruction told the jury that:

".  .  ., to establish the defense of payment of a pre-existing debt by the note or obligation of a third party, it is necessary for the defendant to prove by a fair preponderance of the evidence that the said note or obligation was given to the creditor and received by him upon the express agreement that it should be in satisfaction of the previous debt and the burden of proof is upon the defendant setting up such defense."

We think the instruction correctly states the law. *Wipperman* v. *Hardy* (1897), 17 Ind. App. 142, 46 N. E. 537; *Price* v. *Barnes* (1893), 7 Ind. App. 1, 31 N. E. 809.

Appellant's points eight and nine present no question for consideration. They attempt to question the correctness of instruction No. 2, given at the request of appellee. This instruction is as follows:

"You are further instructed that a non-negotiable note or obligation is not the payment of a pre-existing debt, but is nothing more than a due bill, unless it was specifically agreed that it should."

We can see no objection to this instruction.

Appellant next complains of instruction No. 3, given at the request of appellee. This instruction told the jury that stocks or bonds received by a creditor as collateral only, are not required to be returned or tendered before bringing suit on the indebtedness. We think this instruction states the law correctly. *Grant* v. *School Town of Monticello* (1880), 71 Ind. 58.

Appellant insists that instruction No. 9, tendered by appellant should have been given. It is opposite in effect to instruction No. 3, *supra*, given at the request of appellee. Since we have determined that instruction No.

3, was not erroneous, we therefore hold that it was not error to refuse instruction No. 9.

Appellant's fourth reason for a new trial is, "Error in the assessment of the amount of recovery in this, the amount is too small." Under this cause he contends that where there is no dispute as to the proper amount of recovery the amount due is not a question for the jury, and a verdict for a different sum than the amount proven was unauthorized and a violation of the law and should have been set aside. Appellant cites *Kingan & Co.* v. *Orem* (1906), 38 Ind. App. 207, 75 N. E. 302; *Kundred* v. *Bitler* (1903), 93 Ind. App. 691, 177 N. E. 345; *Paxson* v. *Dean* (1932), 31 Ind. App. 46, 67 N. E. 112; *F. & B. Livery Co.* v. *Indianapolis Trac., etc., Co.* (1919), 71 Ind. App. 203, 124 N. E. 493, and six other cases from foreign jurisdiction in support of the above proposition. Appellee, in opposition to this proposition, says that the assumption on the part of appellant that the evidence is undisputed and the amount due appellee upon his claim is definite and certain in the event appellee is entitled to recover at all, is not supported by the record, and second, appellee says that if the amount found by the jury to be due appellee is too small, and their verdict should have been for a larger amount, still appellant is in no position to complain because he was not injured thereby, and cites in support of his contention *Redpath* v. *Nottingham* (1840), 5 Blackford 267; *Fisher* v. *Holmes* (1890), 123 Ind. 525, 123 N. E. 377; *Talbot* v. *Talbot* (1930), 91 Ind. App. 333, 167 N. E. 535. An examination of the record discloses that the principal amount of the claim was $10,000.00, and that there was also a claim of $1,227.18 interest. The evidence as to the amount of interest due on the claim, the amount of interest paid, the rate to be paid is not made clear and definite by the evidence. Appellee and Joseph Elmore Newell owned the building occupied by the Newell

Brothers Company. It seems that Joseph Elmore Newell paid the taxes on the building and would take credit for interest due appellee on the open account. The whole question of interest is uncertain. So we cannot agree with appellant's contention that the amount due appellee is certain and undisputed. Regardless of the correct rule, as to whether appellant is in a position to raise the question as to the amount of the verdict, where the judgment is for a less sum than what the evidence shows was due plaintiff, or whether the question is properly presented by the assignment of error as herein made, we need not decide. We hold that the verdict is not contrary to law and is supported by sufficient evidence.

Appellant's last contention is, that the appellee should not be permitted to recover in this case, because the claim is subject to the intangible tax as provided in §64-901 Burns Ann. St. 1933, §15899 Baldwin's 1934, and no proof was made at the trial that the tax imposed by Chapter 81, Acts 1933, had ever been paid.

The above section imposes a tax on transactions involving loans or deposit of money. Appellant concedes that an open account is not subject to the intangible tax but insists that this is not the ordinary open account. But the record shows that it was filed and allowed as an open account. Because it is of considerable amount does not change its character or tend to bring it within the terms of the intangible tax law.

Judgment affirmed.